## Harnett *v.* Union Trust Company, Appellant.

*Contract—Building operation—Trusts and trustees.*

Where an owner of a building operation agrees that one of the contractors shall have an equity in certain houses, and a trust company issues a policy insuring the completion of the buildings free from liens, taking as counter indemnity the bond of a person to whom a blanket mortgage is given for his protection on the whole property, and thereafter the properties are all deeded in trust to a clerk of the trust company to convey the equities to the contractor and to protect the holder of the blanket mortgage, and subsequently the contractor releases the equities on the express stipulation that out of the proceeds of a contemplated sale a specified sum should be set apart for him, the trust company cannot disregard such stipulation on the ground that the holder of the blanket mortgage had directed that the proceeds should be paid out to the various mechanics and material men connected with the operation and is liable to the contractor in an action brought by him to recover the sum which he had stipulated should be set apart.

Argued Jan. 14, 1910.  Appeal, No. 247, Jan. T., 1909, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1905, No. 2,301, on verdict for plaintiff in case of James J. Harnett v. Union Trust Company.  Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCH-ZISKER, JJ.  Affirmed.

Assumpsit for moneys had and received.  Before MAGILL, J. The facts are stated in the opinion of the Supreme Court. The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $3,440.  Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*J. Quincy Hunsicker, Jr.,* with him *J. Quincy Hunsicker,* for appellant, cited: Bank v. Douglass, 4 Watts, 95; Miller v. Howry, 3 P. & W. 374; Newton v. Levis, 1 Del. Co. Reps. 28.

*Ira Jewell Williams,* of *Simpson & Brown,* for appellee, cited: Schrack v. Shriner, 100 Pa. 451; Smith's Est., 28 W. N. C. 565; Eshbach's Est., 197 Pa. 153.

OPINION BY MR. JUSTICE MOSCHZISKER, February 14, 1910:

On June 16, 1903, the plaintiff, Harnett, entered into a written contract with one Purdy, by the terms of which he agreed to do plumbing work on a building operation for a consideration of $5,750; $3,000 of which was to be paid in cash, and for the balance the plaintiff agreed to take "nine equities of $700 each" in certain of the houses, each subject to a first mortgage of $1,500. The defendant trust company agreed with Purdy to issue policies to the holders of the first mortgages insuring the completion of the buildings free from liens; and Purdy agreed that the money derived from the first mortgages, from the sale of the houses, and from other sources in connection with the operation, should be deposited with the trust company to be disbursed by it. One Prettyman agreed with the trust company to indemnify it against loss under this contract with Purdy, and delivered his bond to the trust company, together with a letter dated June 9, 1903, stating the conditions of its delivery, one of which was that Prettyman was to be given a blanket second mortgage of $20,000 upon the whole operation, to indemnify him against possible loss by reason of his undertaking. It was also stipulated that the bond was not to take effect until the various conditions of the letter were complied with. The bond was subsequently dated June 16, 1903. The mortgage was dated June 1, 1903, but the date of its delivery does not appear upon the record. On June 26, 1903, pursuant to the contract previously entered into by Purdy and the trust company, the properties in the operation were conveyed to one Andress, a clerk of the trust company who acted as agent for it in the transaction. The same day Andress executed a deed

of trust, which, after reciting the first mortgages and the Prettyman second mortgage, declared that "subject as aforesaid" the premises were held in trust to convey to the plaintiff upon the completion of all his plumbing work, the nine houses mentioned in his contract, then in trust to protect the trust company, and next for the protection of Prettyman, after which the trust deed provides that upon the sale of any of the houses before the completion of all of them, the trustee is "to convey the same to the purchaser in fee simple, subject only to the first mortgages thereon, provided the purchase money over and above the said mortgages shall be deposited with the said trust company, to be used by it in defraying the cost of said buildings. . . ." This deed of trust was approved and accepted in writing by both Purdy and Prettyman. Subsequently certain of the properties, including the nine houses that were to be conveyed to the plaintiff, were sold. It was necessary to get from Prettyman a release of his blanket mortgage, and to get a release from the plaintiff of his right to a conveyance of the nine properties. By a letter dated April 1, 1904, and delivered to the defendant company, May 5, 1904, the plaintiff, stipulating that his action was "with the distinct understanding that the sum of $2,700 shall be set aside from said sale as my interest in the same," agreed to release his right to have the properties conveyed to him. June 16, 1904, Prettyman released the properties, and wrote a letter to the defendant company to the effect that the release was given on condition that the money "be deposited in the building fund, and paid out by your company to the various mechanics and material men connected with the said operation." The money derived from the sale of the nine houses, amounting to more than $2,700, came into the hands of the trust company, but, instead of setting aside the sum of $2,700 to the plaintiff, it used the money in the operation generally. The defendant company admitted the receipt of the plaintiff's letter setting forth the conditions upon which his release was given, but stated that late in June, 1904, it informed the plaintiff of the instructions from Prettyman to the effect that his release was given upon condition

that the entire proceeds of the sale were to go into the account of the operation, and that it would follow his directions. Purdy made default and did not finish the operation. Prettyman was obliged to reimburse the defendant company in the sum of $5,400, money advanced by it to complete the houses. The plaintiff sued averring his rights under the Andress declaration of trust; that he had performed his work and that more than $2,700 was still due and owing to him. The defendant company admitted that the plaintiff had fully performed his work, but asked for binding instructions upon the ground that its rights and the rights of Prettyman under the declaration of trust were prior and superior to those of the plaintiff; and that in handling the funds it was a mere depository and had paid all the money to other mechanics and material men in the completion of the buildings. The trial judge declined to so charge and instructed the jury to find for the plaintiff.

All of the material facts were undisputed and most of the evidence was documentary. The first four assignments of error go to the refusal of the trial judge to instruct for the defendant, and to the instructions given for the plaintiff. The fifth assignment of error goes to the exclusion of certain evidence offered by the defendant to show that Purdy was in default and that Prettyman was put thereby to large expense as surety. This evidence was immaterial and properly excluded; but in stating the facts we have treated the important parts of defendant's offer as if the evidence had been admitted, and we will rule the case on that basis.

The clause in the declaration of trust to the effect that the proceeds of the sales of the houses "shall be deposited with the trust company to be used by it in defraying the costs of said building" cannot be taken to defeat the right of a particular cestui que trust to the proceeds of properties designated for conveyance to him.

Conceding that Prettyman's rights as mortgagee were originally prior and superior to those of the plaintiff, the rights of all the parties became fixed and defined in and by the Andress declaration of trust; and the right of the plaintiff

thereunder to a conveyance of the nine properties was known both to the defendant and to Prettyman. The plaintiff released this right upon condition that $2,700 obtained from the sale of the properties, should be paid to him. When Prettyman released his mortgage, he gave up any superior right he might otherwise have had over the plaintiff; and when the funds came into the hands of the trust company, it held the $2,700 for the use of the plaintiff. In the words of the trial judge: "When Mr. Prettyman released those houses from the lien of his mortgage with the understanding that the proceeds should be applied to the payment of moneys due or to become due mechanics or material men connected with the operation, he in no sense deprived Mr. Harnett of the right which he had to have the proceeds of the sale of those properties; because under the declaration of trust and under the terms of the agreement he was one of the material men referred to specifically and there is nothing here to show that Mr. Prettyman, when he agreed that the proceeds should be applied to the payment of material men, did not have in mind that the proceeds, at least to the extent necessary to be paid Mr. Harnett for the completion of his contract, were not to be paid out of the proceeds of the sale of those nine houses."

After receiving the plaintiff's letter stating the conditions upon which his release was given, and after accepting and retaining the release upon those conditions, the defendant company could not alter nor prejudice the plaintiff's rights by informing him of its understanding of Prettyman's instructions relative to the condition upon which his release was delivered, or of its intentions in the matter; so the trial judge committed no error in treating the evidence on that point as immaterial.

The assignments of error are overruled and the judgment affirmed.